In re BILL & PAUL'S SPORTHAUS, INC., Debtor.

Bankruptcy No. NG 81–04703.

United States Bankruptcy Court, W.D. Michigan.

June 24, 1983.

Bergstrom, Slykhouse & Shaw, P.C., Richard B. Oole, Grand Rapids, Mich., for debtor.

Hertzberg & Golden, Robert S. Hertzberg, Birmingham, Mich., for creditors' committee.

## OPINION

### ATTORNEY FEES SECTION 330—ORDERS NUNC PRO TUNC

DAVID E. NIMS, Jr., Bankruptcy Judge.

This matter is before the court on the application of Robert S. Hertzberg for compensation as attorney for the Creditors' Committee. Hertzberg is a partner of Hertzberg and Golden, located in Birmingham, Michigan.

The court makes the following Findings of Fact:

On December 9, 1981, Debtor, Bill & Paul's Sporthaus, Inc., filed a petition under Chapter 11 of Title 11 of the United States Code. A Creditors' Committee was initially formed pursuant to 11 U.S.C. § 1102 on January 13, 1982. New members were added at later dates.

A confirmation hearing on the plan of reorganization submitted by Debtor was held on September 14, 1982. Debtor was represented by Richard B. Oole, of Grand Rapids, Michigan; Oole appeared at the hearing. Hertzberg also appeared at the hearing and stated that he represented "six unsecured creditors."

Hertzberg objected to the proposed plan for the reason that it discriminated unfairly among general unsecured creditors by classifying three of such creditors separately and providing for them payment of 100 cents on the dollar while the majority of unsecured creditors were to be paid 40 cents on the dollar. The hearing was ultimately adjourned to the next week.

On September 15, 1982, the day following the hearing, Hertzberg was appointed by the Creditors' Committee as their attorney. His subsequent negotiations to secure equal treatment for all unsecured creditors, and more generous provisions for the majority of them, were successful. Under the amended plan, all unsecured creditors were to be paid 100% of their claims; the plan was confirmed on September 20, 1982.

On October 12, 1982, an application and order nunc pro tunc authorizing employment of attorney and secretary to Credi-tors' Committee was submitted to the court. The application, dated October 4, 1982, and signed by the Committee Chairman Chellis Collins, stated that Hertzberg had been appointed as the Committee's attorney on September 15, 1982. The application also stated the necessity of Hertzberg's employment, the reasons for his selection, the services rendered, and the absence of any adverse interests. The order authorizing Hertzberg's employment nunc pro tunc was signed October 13, 1982, by the Bankruptcy Judge, David Erwin Nims, Jr.

Hertzberg filed an application for compensation for attorney for the Creditors' Committee on January 10, 1983. The application included a detailed accounting of services performed and the amount of time spent on each activity. Compensation was requested at the rate of $100.00 per hour for 25½ hours for a total of $2,550.00. Expenses were listed as $359.00. According to the application, 8½ hours of service had been rendered by Hertzberg prior to his September 15 appointment. Sixteen hours worth of services had been performed after September 15 but prior to the signing of the nunc pro tunc order authorizing his employment. Hertzberg spent one hour preparing his application for fees on January 6, 1983.

At a hearing on fees held February 28, 1983, Oole, attorney for debtor in possession, argued that Hertzberg was precluded by statute from receiving any compensation for the 24½ hours of service performed prior to the time his employment was authorized by order of the Bankruptcy Court.

The matter was taken under advisement with briefs to be submitted if desired.

### I

The first matter to consider is Hertzberg's right to compensation for the 8½ hours of services performed by him prior to September 15.

■ He clearly cannot be compensated as attorney for the Creditors' Committee for services performed prior to his employment by the Creditors' Committee. In his application for fees, Hertzberg states that he

was "engaged by the Creditors' Committee one day prior to the September 14 Confirmation hearing." However, in view of the facts that the Committee Chairman's application states that Hertzberg was retained on September 15, and that prior to that date, Hertzberg represented himself before the court as acting on behalf of "six unsecured creditors," it is apparent that he was not actually appointed by the Creditors' Committee until September 15. Fees for services performed prior to that date must therefore be denied.

## II

As to the remainder of Hertzberg's fees, the issue is whether or not the Bankruptcy Court has the power to issue an order nunc pro tunc authorizing the employment of an attorney for the Creditors' Committee, and, if so, was such an order proper in this case.

The statutory scheme set out in the Bankruptcy Code is unambiguous in its requirement that an attorney for a creditors' or other committee, as well as an attorney for a trustee or debtor in possession, is entitled to fees and expenses only after the Bankruptcy Court has approved his employment.

11 U.S.C. Section 330 provides:

"(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any para-professional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses."

The compensation allowed under this section to an attorney for a creditors' committee is subject to Section 328, which states:

"(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions."

Section 1102(a) provides for the appointment of a committee of unsecured creditors, and, upon request of a party in interest, a committee of equity security holders. Section 1103(a) authorizes such a committee to hire an attorney as follows:

"(a) At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents to represent or perform services for such committee."

Section 327 has a similar provision for the hiring of an attorney by the trustee. Interim Bankruptcy Rule 2006 provides:

"Interim Bankruptcy Rule 2006 ('Employment of professional persons') provides in full:

An order approving the employment of attorney, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327 or § 1103 of the Bankruptcy Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for such employ-

ment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, and to the best of the applicant's knowledge all of such person's connections with the debtor, the creditors, or any other party in interest, and their respective attorneys and accountants."

In cases decided under the Bankruptcy Code of 1898, Bankruptcy Rules 215 and 11–22 required court authorization for the employment of attorneys for the trustee and creditors' committee. General Order 44 also required court authorization for the employment of attorneys for the receiver, trustee or debtor in possession.

According to 2 Collier 327–5 (15th Ed. 1982) the reason for these rules is as follows:

"The services for which compensation is requested must have been performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering services may be an officious intermeddler or a gratuitous volunteer."

Virtually all courts applying the above rules and their predecessors have read them to mean that an attorney may not be compensated for services performed prior to his obtaining court authorization of employment, at least in the absence of the court's exercise of any discretion it may have to issue an order *nunc pro tunc.* See, e.g., *Gochenour v. Cleveland Terminals Bldg. Co.,* 142 F.2d 991 (6th Cir.1944); *In re Eureka Upholstering Co.,* 48 F.2d 95 (2nd Cir. 1931); *In re King Electric,* 19 B.R. 660 (D.C.E.D.Va.1982); *In re Vermont Real Estate Investment Trust,* 26 B.R. 905, 10 B.C.D. 147 (Bkrtcy.D.Vt.1983); *In re American Trawler Corp.,* 24 B.R. 505 (Bkrtcy.D. Me.1982); *In re Rene Press Inc.,* 23 B.R. 381 (Bkrtcy.D.Mass.1981); *In re Garland,* 8 B.R. 826 (Bkrtcy.D.Ma.1981).

*Nunc Pro Tunc* is latin for "now for then" and generally operates to give retroactive effect to an order or other act. Black's Law Dictionary provides the following definitions:

"Nunc pro tunc /nénk pròw ténk/. Lat. Now for then. *In re Peter's Estate,* 175 Okl. 90, 51 P.2d 272, 274. A phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, i.e., with the same effect as if regularly done. Nunc pro tunc entry is an entry made now of something actually previously done to have effect of former date; office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake. *Seabolt v. State,* Okl. Cr., 357 P.2d 1014.

Nunc pro tunc merely describes inherent power of court to make its records speak the truth, i.e., to record that which is actually but is not recorded. *Simmons v. Atlantic Coast Line R. Co.,* D.C.S.C., 235 F.Supp. 325, 330. Nunc pro tunc signifies now for them, or, in other words, a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done. *State v. Hatley,* 72 N.M. 377, 384 P.2d 252, 254."

The effect of issuing an order appointing an attorney nunc pro tunc, if the court has the power to do so, would be to allow fees to the attorney from the date he began performing services.

There is one case in which the Sixth Circuit Court of Appeals expressly ruled that an attorney could not be compensated for services performed without court authorization. In the case of *Gochenour v. Cleveland Terminals Building Co.,* 142 F.2d 991 (6th Cir.1944), cert. den., 323 U.S. 767, 65 S.Ct. 120, 89 L.Ed. 614 (1944), the attorney-appellants, acting on behalf of their creditor-clients, had prosecuted a claim of the corporate subsidiary debtor against another entity, Midamerica Corporation. In affirming denial of fees to appellants, the court stated at 995:

"Under General Order 44, * * * an attorney for a receiver, trustee or debtor in possession can be appointed only upon order of the court, granted upon a petition stating specified facts and the em-

ployment of the attorney must be for a specific purpose, unless the court is satisfied the case is one justifying a retainer. General orders have the force of law. [citations] This General Order cannot be bypassed by the creditors or their attorneys without the consent of the court. Since appellants do not bring themselves within the General Order in question, it is immaterial whether or not their services were beneficial to the subsidiary debtor. They are entitled to nothing here."

However, the facts found by the court in *Gochenour* distinguish it from our case in several significant respects. These include: action taken by the attorneys was in effect on behalf of the debtor in possession, but debtor in possession had at all times been represented by court-approved counsel; action taken by attorneys was of no benefit to the estate; attorneys had already been paid $18,000 by their creditor-clients; attorneys' application to the court to act on behalf of the creditors or the debtor in possession in prosecution of its claim was denied; attorneys were never at any point approved by the court.

Not only are there factual differences which would render the *Gochenour* decision distinguishable, but the decision also fails to address the issue of whether a court may ever appoint an attorney *nunc pro tunc.* The effect of statutory requirements regarding attorney employment, and the court's power to issue an order *nunc pro tunc,* are two different issues. The Ninth Circuit has recognized this.

In the case of *Beecher v. Leavenworth State Bank,* 184 F.2d 498 (9th Cir.1950, reh. denied), the district court had allowed the attorney for the receiver compensation for services performed since July 3, 1947, the day he was appointed by the receiver, although he was not employed by court order as required by General Order 44 until December 30, 1947. On appeal the Ninth Circuit held that:

"The district court, in allowing the fee to the attorney for the receiver for the period prior to December 30, 1947, is reversed. He is entitled to fees only for

such services after that date, the order then made being a valid compliance with Order 44."

In a later Ninth Circuit case, *In the Matter of Laurent Watch Co., Inc.,* 539 F.2d 1231 (9th Cir.1976), the attorney for the debtor in possession, having failed to obtain an order appointing him in accordance with Order 44, was denied any compensation. The attorney subsequently moved for an order appointing him nunc pro tunc. This was denied by the referee on the sole ground that such an order was barred by *Beecher, supra.* The district court affirmed the denial. However, on appeal to the Ninth Circuit, the court held that:

"*Beecher* does not bar entry of a nunc pro tunc order. Whether the requirements of Order 44 may be met by a nunc pro tunc order in proper circumstances was not an issue in *Beecher.*"

The court noted that the determinations required by Order 44 (that the attorney represented no adverse interests) had been made by the referee before the attorney performed services. The case was remanded for consideration of whether a nunc pro tunc order should be entered.

In *In re Triangle Chemical Co.,* 697 F.2d 1280, 10 B.C.D. 325 (5th Cir.1983) the court stated that:

"Under both the Bankruptcy Code and the applicable rules of bankruptcy procedure prescribed by the Supreme Court, therefore, it is plain that the present debtor in possession was not authorized to employ an attorney without the approval of the bankruptcy court. Nevertheless, while the rules contemplate court approval prior to attorney's employment, they do not in terms or necessary implication prohibit the court in its discretion from granting its approval, nunc pro tunc, at a date subsequent to the employment and after the services are rendered, providing that the required showing is made (see section 327 of the Code, note 2 supra, and Interim Rules 2006, note 5, supra) warranting the approval."

It does not appear that the Sixth Circuit ruling in *Gochenour, supra,* in which case

the attorney had not requested a *nunc pro tunc* order of appointment, and where, in fact, his initial application for appointment had been denied, should in itself preclude the possibility of a nunc pro tunc order in this case.

There is some disagreement among courts as to whether the bankruptcy court has the discretion to issue a *nunc pro tunc* order authorizing employment. This issue has not been considered by the Sixth Circuit but did arise in the Western District of Michigan in the case of *Benton Harbor Malleable,* 2 Bankr.Ct.Dec. 1521 (W.D.Mi.1976). In that case, the attorney for the Chapter XI debtor in possession (who stands in the shoes of a trustee) sought an order *nunc pro tunc* authorizing his employment one year after adjudication of the Chapter XI case.

After citing those rules entitling the attorney for the trustee to compensation for services performed after the court had approved his employment, this court stated:

> "On a very few occasions, I have granted leave to a trustee in bankruptcy to retain an attorney, *nunc pro tunc.* But, in those cases, several factors were present that are absent in this case. (1) There was no other attorney representing the trustee. (2) The court was at all times aware of the efforts being performed by the attorney and assumed that an order approving his appointment had been entered. (3) Proceedings were in the bankruptcy court and that court recognized the attorney as the legal representative of the trustee. (4) Fees were limited in amount. (5) No objections were made to the fees."

The Western District of Michigan has thus recognized the bankruptcy court's discretionary right to issue an order *nunc pro tunc* in an appropriate case.

█ In this case, Hertzberg was at all times the only attorney representing the Creditors' Committee, the Court was aware of his efforts on behalf of the creditors, the proceedings took place in the bankruptcy court where the Court recognized Hertzberg as the Committee's representative, and fees were limited and reasonable in light of the nature and quality of the services performed.

Here, only one of the considerations mentioned in *Benton Harbor Malleable,* namely, that "no objections were made to the fees", has not been met. The attorney for the debtor did object, which is why this matter was taken under advisement.

The five factors set out in *Benton Harbor Malleable* were not stated to be absolute requirements; rather, they represent a non-exhaustive list of things that this court would find significant and take into consideration in deciding whether or not to exercise its equitable powers to issue an order *nunc pro tunc.* In *Benton Harbor Malleable,* the order was denied since *none* of the factors listed applied to the attorneys in that case.

Since *Benton Harbor Malleable,* there have been a number of decisions on the court's discretion to enter a *nunc pro tunc* order authorizing employment. The majority of them have ruled explicitly or by implication that the bankruptcy court did have the power to do so.

However, the bankruptcy court in *Matter of Seatrain Lines, Inc.,* 15 B.R. 583 (Bkrtcy. S.D.N.Y.1981), relied on by Debtor, ruled that delay by the Secretary of the Creditors' Committee in seeking court authorization because of an assumption by him that the attorneys would make the application on his behalf was not excusable neglect sufficient to justify an order nunc pro tunc.

The denial of the court's power to enter such an order in *In re Mork,* 19 B.R. 947, 949 (Bkrtcy.D.Minn.1982) was based on the court's view that "it is an order designed to make the record speak the truth and it does not indicate the existence of the power to enter an order to record that which was omitted to be done." The court also stated that "I conclude that as here not only absent an order, but absent any communication with the court whether or not resulting in an order, sufficient to apprise the court as to the intended retention and its necessity and terms the court is without power to undo what has been done." In the instant

case, of course, the court was at all times aware of the retention of Hertzberg and of the necessity of such retention.

The Second Circuit's decision in *In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988 (2nd Cir.1931) is also inapplicable. In that case, authorization by *nunc pro tunc* order was denied where the attorney for the receiver would have been ineligible for appointment (because of adverse interest) regardless of when his application was made. See also, *In re Schatz Federal Bearings Co.*, 17 B.R. 780, 783 (Bkrtcy.S.D.N.Y.1982), (authorization *nunc pro tunc* was denied but attorneys were directors of corporate debtor and therefore not disinterested parties).

Recently the Fifth Circuit in *In re Triangle Chemical, Inc.*, 697 F.2d 1280, 10 B.C.D. 325 (5th Cir.1983), rendered a comprehensive opinion on the sole issue of the bankruptcy court's discretion to enter an order *nunc pro tunc* authorizing an attorney's employment in cases where it would have done so had the court's approval been sought prior to the performance of services.

The Fifth Circuit held that the bankruptcy court did have such power, and vacated the lower court's denial of compensation as erroneously based on a determination that it had no authority at law to enter a *nunc pro tunc* order approving the attorney's employment; the case was remanded to the bankruptcy court for it to determine in its sound discretion whether such an order should be entered.

Among the many cases cited with approval by the Fifth Circuit in *Triangle Chemical, supra*, are *In re Laurent Watch Co.*, 539 F.2d 1231 (9th Cir.1976) (discussed above); *In the Matter of Stolkin*, 472 F.2d 222 (7th Cir.1973) (a *nunc pro tunc* order appointing attorney for a Chapter XI debtor was not precluded where it could not have been challenged by creditors, for whom the rule was meant to protect.)

*In re King Electric Co., Inc.*, 19 B.R. 660 (D.C.E.D.Va.1982), where the district court specifically found that failure of the bankruptcy court to enter an order *nunc pro tunc* appointing counsel for the debtor in possession was an abuse of discretion. In

that case, counsel, whose representation of the Chapter 11 debtor in possession had been noted on the bankruptcy petition, did not apply for employment with the bankruptcy court until seven months after the petition was filed. The bankruptcy court did authorize employment as of that date but refused to enter an order *nunc pro tunc.*

On appeal, the Creditors' Committee filed a brief in opposition to reversal of the bankruptcy court's decision, arguing the inflexibility of the rule requiring prior court approval and the fact that the attorneys are charged with knowledge of the rule. The U.S. Trustee also filed an amicus curiae brief supporting the denial of compensation, arguing that exceptions to the rule should be made only upon a showing of good cause as to why the applications could not have been timely filed.

The court noted that the facts of the case before it were distinguishable from cases cited in opposition to reversal in at least one of three significant respects which are also applicable in the instant case. Where compensation was denied, the attorney was a stranger to the proceedings and no interested party had notice, *In re Fiberglass Specialty Co.*, 12 B.R. 119 (Bkrtcy.D.Minn.1981), was rendered incompetent or performed unnecessary services, *In re Furniture and Interiors, Inc.*, 14 B.R. 230 (Bkrtcy.S.D.Tex. 1981), or the attorney failed to ever receive authorization to represent the debtor, *King Electric*, at 662.

In remanding the case to the bankruptcy court with directions to employ counsel *nunc pro tunc*, the court stated at p. 663 as follows:

"A review of the case supports appellant's argument that a *nunc pro tunc* order is not forbidden under the facts here presented. The Supreme Court has recognized the 'overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.' *Marin v. Bank of England*, 385 U.S. 99, 103 [87 S.Ct. 274, 277, 17 L.Ed.2d 197] (1966). The bankruptcy judge gave no reason for the denial of the order. Neither the

Creditors' Committee not the Trustee has shown any prejudice that would result from entry of the order. Indeed, no reason for withholding equity has been advanced by anyone other than that the application was not timely. Additionally, because the Bankruptcy Court has full control over the allowance of fees, there is here no chance of overreaching through unnecessary or improper activity of counsel either before or after formal employment. Considering these factors, especially the failure to disclose any reason therefore, the Court holds that the refusal to enter the order *nunc pro tunc* was an abuse of discretion."

I find this to be sound reasoning and applicable to the matter before this court. Due to the following considerations, namely, (1) this court has previously recognized the right to issue a *nunc pro tunc* order authorizing employment in Benton Harbor Malleable, (2) on October 13, 1982, this court exercised its discretion to enter such an order appointing Hertzberg, (3) as noted above, four of the five factors considered significant in *Benton Harbor Malleable* were present in this case, (4) Hertzberg's application for employment included all information required by Interim Bankr. Rule 2006, (5) Hertzberg performed valuable services for the Creditors' Committee and helped to effectuate a feasible plan of reorganization, (6) Recent decisions, cited above, by district and appellate courts would support the entry of a *nunc pro tunc* order in this case, I therefore find that the order issued *nunc pro tunc* on October 13, 1982, was proper and that Hertzberg should be compensated as requested for all services performed by him after September 15, 1982, and prior to the hearing on fees held February 28, 1983.

Fees are allowed in the sum of $1,700.00 plus expenses of $359.00.