**In re Theodore V. OLSON and Sandra Ann Olson, Debtors.**

**Bankruptcy Nos. BK 82–0–379, CV 83–0–277 and CV 83–0–297.**

United States District Court, D. Nebraska.

Dec. 23, 1983.

Robert B. Creager, Berry, Anderson Law Firm, Lincoln, Neb., Frank Heinisch, Heinisch & Bryan, Geneva, Neb., and William L. Needler, Chicago, Ill., for debtors.

Timothy V. Haight, Omaha, Neb., for O'Neill Production Credit Assn.

### MEMORANDUM AND ORDER

BEAM, District Judge.

These consolidated cases are on appeal from an order dated April 13, 1983, by the Bankruptcy Court for the District of Nebraska, in which the Honorable Richard Stageman, sitting by special designation, denied the debtors' application for approval nunc pro tunc of the employment of three attorneys. The debtors, prior to the filing of their Chapter 11 bankruptcy petition on March 1, 1982, had engaged the services of William L. Needler & Associates, Ltd. [Needler], Heinisch and Bryan Law Office [Heinisch] and Berry, Anderson, Creager & Wittstuck, attorneys at law [Creager]. Heinisch and Creager had previously represented the debtors in agricultural and busi-

ness dealings, and Needler is an expert in insolvency law.

11 U.S.C. §§ 327 and 1107 require prior court approval before a debtor in possession may employ an attorney or other professional person to assist the bankruptcy estate in a Chapter 11 proceeding. In the present case, the debtors failed to make such application until July 15, 1982, over four months after filing their Chapter 11 petition. On that date they requested an order nunc pro tunc approving employment of Needler, Heinisch and Creager retroactive to March 1, 1982.

On August 12, 1982, the Bankruptcy Court held a hearing on the application and took the matter under advisement. On November 29, 1982, he ordered the payment of interim attorney fees to Needler and Heinisch. Then on March 15, 1983, in the course of a hearing on a subsequent application for interim fees, the Bankruptcy Judge discovered that an application for leave to appeal the prior fee award had been filed by O'Neill Production Credit Association [O'Neill PCA] and that this creditor strenuously objected to the authorization of fees to any of the attorneys in question in the absence of court approval of their employment.

O'Neill PCA, appellee herein, contested the authority of the Bankruptcy Court to enter an order nunc pro tunc approving employment of counsel and challenged the qualifications of all of the attorneys in question. Judge Stageman agreed, and by his orders of April 13, 1983 and May 2, 1983, he denied the debtors' application for approval of counsel's employment and vacated his prior award of interim fees.

The Court first finds that the Bankruptcy Judge took an overly restrictive view of his power to enter an order nunc pro tunc approving the employment of counsel for the bankruptcy estate. The Court is persuaded by the well-reasoned and equitable approach expressed in *In the Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983); *In re Bill & Paul's Sporthaus, Inc.,* 31 B.R. 345, 347–52 (Bkrtcy. W.D.Mich.1983) and *In re Tom's Variety &*

*Hardware, Inc.,* 30 B.R. 298, 299 (Bkrtcy.S. D.Ohio 1983). These decisions agree that a bankruptcy court is not precluded by statute or rule from granting an order nunc pro tunc authorizing employment of counsel in a bankruptcy proceeding when valuable services have been rendered.

This result is particularly appropriate in the present case in which the Bankruptcy Judge has expressly acknowledged the tireless efforts of the attorneys in representing the bankruptcy estate. Furthermore, the delay between the application and the denial of employment and further delays on appeal must necessarily have caused expense and prejudice to counsel who properly have remained active on the debtors' behalf. The Court is satisfied that the explanations provided for the inadvertent delay in seeking approval of employment provide adequate excuse and constitute cause for an order nunc pro tunc.

O'Neill PCA asserts, and the Bankruptcy Court generally agreed as an alternative basis for denial of counsel's employment, that each of the attorneys held interests adverse to the estate and that each fails to qualify as "disinterested." *See* 11 U.S.C. §§ 101(13), 327(a), (e), 1107; *Bankruptcy Rule* 215(a), (b). This conclusion stems primarily from the relationship among the debtors, their attorneys and Ted Olson Enterprises, Inc. [TOEI], a closely held corporation owned by Ted Olson and his sons. Under a custom farming agreement and at one point a lease arrangement, TOEI has been farming the debtors' property and has provided the labor and machinery as well as much of the financing for production of the debtors' 1982 corn crop.

As to Needler, who has never represented TOEI, the charge of adverse interest appears to be premised on his close working relationship with Heinisch and Creager, who had represented TOEI for several years prior to this bankruptcy proceeding. Apparently, all three attorneys as a matter of business judgment have regarded the interests of TOEI and the debtors as at least similar. The attorneys advocated a custom farming agreement between TOEI

and the debtors to which O'Neill PCA vigorously objected. In addition, TOEI has provided financing at critical stages of the debtors' post-petition farming enterprises when little or no funds or credit was otherwise available to them. TOEI also advanced funds to the debtors for living expenses.

█ This Court cannot review the merits of the custom farming agreement or the services provided the bankruptcy estate by TOEI and has not been asked to do so. However, much more than a general allegation of adverse interest or "appearance of being on TOEI's side in the courtroom" would be necessary, in the Court's view, to affirm the disqualification of counsel who, as the Bankruptcy Court noted, "have been tireless advocates" on behalf of the debtors.

One aspect of the relationship between TOEI and debtors' counsel does concern this Court, i.e., TOEI's extension of fee advances to the attorneys in the absence of the debtors' ability to pay pre-petition retainers. However, no specific advantage to TOEI, injury to the estate, prejudice to other creditors or actual conflict arising from the advances is apparent from the record before the Court.

In addition, the Court cannot agree that the relationship between the attorneys and TOEI has been the subject of "seeping disclosure." Disclosure was late in beginning, but has apparently been full and forthright since that time. The monthly expense report filed in mid-July, 1982, with the debtors' request to employ counsel disclosed that TOEI had made payments to the three attorneys for services rendered to the debtors.[1] Both this disclosure and the application to employ counsel should have been submitted over four months earlier, but were not, as previously discussed, through inadvertence in light of the demands of the debtors' farming operation and the complexities of the bankruptcy litigation. Subsequently, in September, 1982, affidavits accompanying the request of Needler and

Heinisch for interim compensation set forth the amounts received from TOEI for services by these attorneys to the debtors.

Heinisch has asserted, without contradiction by appellee, that as early as May 1, 1982, the Bankruptcy Court was informed of the relationship between the debtors and TOEI and that all reports thereafter have accounted for the activities of TOEI relevant to the debtors' farming operations. All parties acknowledge that Judge Stageman has carefully scrutinized every payment by the bankruptcy estate to TOEI.

11 U.S.C. § 327(c) states with regard to the employment of professional persons on behalf of a bankruptcy estate:

> In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee [or debtor in possession], represent, in connection with the case, a creditor.

Although TOEI is a familyowned closely held corporation of which the bankruptcy estate owns a forty-six percent interest, it is nonetheless a separate legal entity from the debtors and is a listed creditor of the estate. On March 19, 1982, O'Neill PCA brought an action in the District Court of Holt County, Nebraska, to replevin farm equipment held by TOEI. At the request of the debtors, Heinisch and Creager appeared at a hearing in the Holt County Court on April 1, 1982, for the purpose of obtaining a stay of the replevin action because of its impact on the debtors' bankruptcy proceedings. A stay was initially denied. Subsequently, however, Judge Stageman found that the equipment in question was so intertwined with the debtors' bankruptcy proceeding as to warrant enjoining O'Neill PCA from further efforts to replevin any equipment owned by the debtors or by TOEI, until further order of the Bankruptcy Court.

---

1. Previously, on March 31, 1982, in their statement of affairs, the debtors indicated that they had paid the attorneys specified fees during the year immediately preceding the filing of the bankruptcy petition.

The appearance by counsel in April, 1982, for the purpose of seeking a stay constitutes the substance of actual post-petition "representation" of any creditor by Heinisch or Creager. Moreover, Needler was not even involved. In addition, the stay sought by the attorneys ultimately proved necessary to protect the debtors' estate. The Court finds that the action of Heinisch and Creager on April 1, 1982, even if amounting technically to representation of a creditor, was "de minimus" and does not furnish grounds for their disqualification. *See In re W.T. Grant Co.,* 699 F.2d 599, 612–13 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).[2] Furthermore, the appearance of these attorneys in the Holt County Court was for the purpose of and had the effect of benefitting the bankruptcy estate.

For pre-petition services to the debtors, Heinisch received a promissory note in the amount of $12,000.00 secured by a mortgage on the debtors' residence. O'Neill PCA urges that disinterested attorneys for the debtors would have moved on behalf of the estate to avoid the lien as a preference, 11 U.S.C. § 547. However, this matter was resolved over a year ago by agreement that the Heinisch lien would be vacated or the obligation would be paid only after the effective date of the debtors' reorganization plan. In either event, no prejudice to the rights of any creditors is apparent, at least while this case is pending under Chapter 11.

In summary, the Court finds that the debtors' application for employment of counsel should be granted nunc pro tunc as to Needler, Heinisch and Creager, dating back to March 1, 1982, and extending to the date of this order. The amount of compensation to be awarded for the services of these attorneys is a matter within the sound discretion of the Bankruptcy Judge, as is the question whether any or all of the attorneys in question should be authorized to continue in the debtors' employment. The Bankruptcy Court is free to condition continued employment upon any reasonable ground such as the withdrawal of Heinisch and Creager as counsel of record, if they are still listed as such, in the Holt County Court action involving O'Neill PCA and TOEI, or such other acts to disassociate counsel from the interests of TOEI as the Bankruptcy Court deems appropriate.

IT IS THEREFORE ORDERED that the decision of the Bankruptcy Court in these consolidated cases is hereby reversed, and the case is remanded for further proceedings consistent with this Memorandum and Order.

---

**2.** Heinisch's telegram authorization of a temporary $5,000.00 loan by TOEI to the debtors from TOEI's share of the 1981 corn proceeds was also de minimus, if in fact this act even amounted to representation of TOEI.