**In re SENIOR G & A OPERATING COMPANY, INC., Debtor.**

**Bankruptcy No. 88BK–51316.**

United States Bankruptcy Court, W.D. Louisiana, Lafayette–Opelousas Division.

Jan. 27, 1989.

ORDER WITH REASONS

W. DONALD BOE, Jr., Bankruptcy Judge.

This Order on the Court's own motion primarily involves a contract that would circumvent the Court's power to determine compensation for an attorney representing the Debtor-in-Possession.

The Debtor recently filed a Chapter 11 petition. An Application to Employ Counsel seeks appointment of John C. Anderson of Baton Rouge and his firm, and Gerald H. Schiff of Opelousas, and his firm, as attorneys for the Debtor. Attached beneath the necessary affidavit provided with the application is an employment contract providing $225.00 per hour for Mr. Anderson, considerably more than this Court has allowed him in the past, and setting other rates for members of his firm. The employment contract makes stockholders Michael T. Sabolyk and Marshall A. Smith, III each a "Guarantor". It provides that:

> "Guarantor further agrees and guarantees that the hourly rates set forth above will be paid as submitted by Anderson & Holliday irrespective of whether said hourly rates and bills are approved by the Bankruptcy Court and/or reduced by the Bankruptcy Court."[1]

Michael T. Sabolyk owns one-third of the Debtor's stock and, pursuant to an order of this Court, receives monthly compensation of $5,500.00. Marshall A. Smith likewise owns one-third of the Debtor's stock.

■ The Court has the power to determine whether "direct" or "indirect" payments by the Debtor are excessive. *See* Bankruptcy Rule 2017(a) and (b). There is no reason to believe Sabolyk's guaranty would not result in "indirect" payment from funds of the Debtor's estate without court authorization. Sabolyk himself receives a salary that is paid with estate funds.

Beyond this, the employment contract seriously misperceives the extent of the powers of a bankruptcy court to determine compensation. The Court's power over fees is not limited to fees paid from a debtor's estate.

Section 329 of the Bankruptcy Code provides:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
>
> (1) the estate if the property transferred—
>
> (A) would have been property of the estate; or
>
> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>
> (2) the entity that made such payment.

This provision is explained in legislative history of the Reform Act of 1978:

> "This section, derived in large part from current Bankruptcy Act Sec. 60d, requires the debtor's attorney to file with the court a statement of the compensation paid or agreed to be paid to the attorney for services in contemplation of and in connection with the case, and the source of the compensation. Payments to a debtor's attorney provide serious

---

1. Failure to disclose such an arrangement could create an extremely high probability that all fees would be denied at a later point in the case and that all fees received would have to be refunded. *See In re WPMK, Inc.,* 42 B.R. 157 (Bankr.D.Hawaii 1984). Attorneys who apply for appointment under Bankruptcy Rule 2014(a) and its predecessors are held to fiduciary standards of disclosure. *See Matter of Arlan's Dept. Stores, Inc.,* 615 F.2d 925, 5 B.C.D. 973 (2 Cir.1979). Lack of disclosure of relevant information necessary for an informed ruling on an application for employment of an attorney provides basis for denial of a fee application. *In re Marine Power & Equipment Co.,* 67 B.R. 643, 648 (Bankr.W.D.Wash.1986). The Bankruptcy Court has no duty independently to search the case file to determine whether fee arrangements are proper or whether conflicts of interest may exist but may rely on the attorney's affidavit. As a practical matter, an independent review would probably not be productive at the inception of a case when the file is "thin".

potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny.

Subsection (b) permits the court to deny compensation to the attorney, to cancel an agreement to pay compensation, or to order the return of services provided. *The return of payments already made are generally to the trustee for the benefit of the estate. However, if the property would not have come into the estate in any event, the court will order it returned to the entity that made the payment."* H.R.Rept. No. 95–595, 95th Cong. 1st Sess. 329 (1977). S.Rept. No. 95–989, 95th Cong., 2d Sess. 39–40 (1978), U.S.Code Cong. & Admin. News 1978, 5787, 5825, 6285–6286 (emphasis supplied).

Bankruptcy Judge Harold C. Abramson of the Northern District of Texas has provided this excellent summary of the meaning, intent, and policy considerations underlying Section 329:

"Bankruptcy Code Sec. 329 leaves no doubt that counsel for a debtor must disclose the compensation paid or agreed to be paid, regardless of the source. In addition, Sec. 329 unequivocally grants the Court the power to review and order the return of any payment made within one year of the filing of the petition, regardless of the source. Moreover, any agreement concerning compensation executed may be cancelled by the Court. The legislative history of Sec. 329 sets forth the basic premise of the grant of such powers to the Court. 'Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney and should be subject to careful scrutiny'. S.Rep. No. 95–989, 95th Cong., 2d Sess. 39 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5825 (emphasis added). *See also In re Furniture Corporation of America,* 34 B.R. 46 (Bkrtcy.S.D.Fla.1983) (fees paid to debtor's counsel may be reviewed regardless of their source, as the source

determines only the party to whom the Court may order a refund); *In re Perros,* 14 B.R. 515, 517 (Bkrtcy, E.D.N.Y.1981) ("the power of this court to review attorney's fees is ... expressly authorized under Sec. 329 of the Bankruptcy Code ... the policy underlying this authority is to prevent overreaching by the debtor's attorneys and to protect creditors"); *In re Swartout,* 20 B.R. 102, 105 (Bkrtcy.S.D.Ohio 1982) ("the traditional elements of the bargaining process do not typically exist in the formation of contracts between debtors and their attorneys; and, therefore, the role of the court ... is to protect the interests of creditors of the estate by allowance of compensation allegedly due an attorney only to the extent actually and reasonably compensable for the services provided"); *In re Crestwell,* 30 B.R. 619 (Bkrtcy.D.D.C.1983)."

*In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 572–73 (Bankr.N.D.Tex.1986) (footnotes deleted)

Section 329 is supplemented in Chapter 11 cases, like this one, by Section 1129(a)(4) which is an indispensable requirement for plan confirmation.

*1129. Confirmation of plan*

(a) the Court shall confirm a plan only if all the following requirements are met:

\*    \*    \*    \*    \*    \*

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, have been approved by, or is subject to the approval of, the court as reasonable.

Official Form No. 31, "Order Confirming Plan", prescribed by the Judicial Conference of the United States pursuant to Bankruptcy Rule 9009, restates this language as a determination reached by the confirming court. Any "Order Confirming Plan" must "conform substantially" to the Official Form. *See* Advisory Committee Note to Rule 9009.

Section 1129(a)(4) is similar to and derived from Section 221(4) of the Bankruptcy Act of 1898. *Bankruptcy Reform Act of 1978*, H.Rept. 95–595, 95th Cong., 1st Sess. 126 and 412 (1977). Section 221(4) provided:

> "Confirmation by court—The judge shall confirm a plan if satisfied that—
>
> . . . .
>
> (4) all payments made or promised by the debtor or by a corporation issuing securities or acquiring property under the plan or by any other person, for services and for costs and expenses in, or in connection with, the proceeding or in connection with the plan and incident to the reorganization, have been fully disclosed to the judge and are reasonable or, if to be fixed after confirmation of the plan, will be subject to the approval of the judge ..." 11 U.S.C.A. Sec. 621(4) (1970).

*Leiman v. Guttman*, 336 U.S. 1, 69 S.Ct. 371, 93 L.Ed. 453 (1949) squarely held that Section 221(4) applied even to "fees incident to the reorganization but not payable out of the estate". *Id.* 69 S.Ct. at 372. Preferred stockholders had escrowed shares to give their attorneys "additional compensation" for their reorganization services. The Supreme Court reversed a bankruptcy court holding that it had no power to determine the amount to be paid under the agreement. Writing for the Court, Mr. Justice Douglas reviewed the history of Section 221 history and the evils it sought to remedy:

> "The control of the judge is not limited to fees and allowances payable out of the estate. Section 221(4) places under his control "all payments made or promised" (1) by "the debtor" or (2) "by a corporation issuing securities or acquiring property under the plan" or (3) "by any other person" for services rendered "in connection with" the proceeding or "in connection with" the plan and "incident to" the reorganization. The services of petitioners concededly met those requirements; and the committee against whom stock a lien is sought to be asserted would plainly be included within the words "any other person". Moreover, these petitioners are included in the classes of claim-

ants to whom the judge is empowered to allow reasonable compensation. To lift petitioner's claim from Sec. 221(4) would therefore be to rewrite it or to hold that when extended so far it was unconstitutional. The latter has not even been intimated. The former is not permissible.

The aim of the expanded controls over reorganization fees and expenses is clear. The practice had been to fix them by private arrangement outside of court. The deposit agreement under which committees commonly functioned was viewed as a private contract, which granted the committee a lien on the deposited securities for its fees and expenses. By terms of the agreement the committee was normally the sole judge of their amount. This gave rise to serious abuses. There was the spectacle of fiduciaries fixing the worth of their own services and exacting fees which often had no relation to the value of services rendered. The result was that the effective amount received by creditors and stockholders under the plan was determined not by the court but by reorganization managers and committees.

Hence Congress instituted controls, controls which became more pervasive as Sec. 77B was evolved into Ch. X. Section 211 requires that a committee file with the court a statement disclosing specified information including the agreement under which it operates. The scrutiny clause of Sec. 212 gives the court power to set aside any of the provisions of such an agreement which it finds to be "unfair or not consistent with public policy". And Sec. 221(4) is written in pervasive terms—it applies to "all payments" for services "in connection with" the plan and "incident to" the reorganization, whoever pays them." *Id.* 69 S.Ct. at 372–374 (footnotes omitted).

*See also, Woods v. City National Bank & Trust Co.*, 312 U.S. 262, 267, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941): "Under Ch. X of the Chandler Act the bankruptcy court has plenary power to review all fees and expenses in connection with the reorganiza-

tion from whatever source they may be payable."

■ Just as a bankruptcy court cannot delegate fee review to another court or agency, *Brown v. Gerdes*, 321 U.S. 178, 182–83, 64 S.Ct. 487, 489–90, 88 L.Ed. 659 (1944), it cannot delegate fee review to the very persons whose fees would be affected, or to their clients who are often uninformed or not in a position to bargain. Attorneys will in the vast majority of instances strenuously attempt to comport themselves with fairness. However, the judgment of our bankruptcy laws is that it is too much humanly to expect that these professionals can be entirely dispassionate judges of the value of their own services. Income not only buys material goods and services, but also tends to have psychic value. Some in our culture value themselves by how much they are paid, or view their income as a measure of what hard-earned effort contributes to society or the economy. Lawyers are not immune from powerful feelings such as these that make the task of fee review difficult for both the judge and the professional seeking fees.

The guaranty of the fees of attorneys for the Debtor may raise a question as to whom the attorneys are actually representing. Counsel's duty of undivided loyalty runs to the Debtor. That duty cannot be compromised by insiders who guaranty compensation. Insiders have been known to make prepetition transfers for personal benefit; to withdraw capital contributions under the guise of repayment of personal loans made to the debtor; to satisfy debts guaranteed by them in preference to non-guaranteed obligations; and to transfer business opportunities of a debtor to a new entity. By accepting a guaranty from an insider, a debtor's counsel may have created a potential conflict of interest. *See* Bernstein and King, *Collier Bankruptcy Compensation Guide* Sec. 2.04[3] (1988). While this Bankruptcy Court will not at this time invalidate the remainder of the employment agreement, it reserves the power to do so if, later in the course of this new case, there is a breach of the attorney applicants' duty of undivided loyalty to the Debtor. It also reserves the power to scru-

tinize any interim or final fee application to ensure that billed services actually were performed for the Debtor rather than third parties. *See generally,* the encyclopedic opinion of *In re Roberts,* 46 B.R. 815 (Bankr.D.Utah 1985), *aff'd in part and remanded in part,* 75 B.R. 402 (D.Utah 1987); and Bankruptcy Code Sec. 328(c).

Bankruptcy Rule 2016(b) Disclosure of Compensation reports filed by Mr. Anderson and Mr. Schiff vaguely refer to the assignment by the Debtor to them of a note (and its proceeds) in the amount of $50,000.00. This is in addition to payment to Mr. Anderson of $11,000.00 and payment to Mr. Schiff of $9,000.00. Further disclosure regarding the assignment of note and proceeds needs to be filed into the public record of this case.

This Court explicitly finds and determines that this *sua sponte* Order authorized by 11 U.S.C. § 105(a) must issue without hearing to prevent possible irreparable injury to the attorney applicants, the Debtor's estate, or both. A hearing will be provided if reconsideration is sought.

ACCORDINGLY, FOR THE FOREGOING REASONS, IT IS HEREBY ORDERED:

1. That the Order Authorizing Retention of Attorneys, being signed simultaneously with this Order, is hereby made subject to all provisions of this Order.

2. That the provision of the Employment Contract guaranteeing that fees will be paid "irrespective of whether said hourly rates are approved by the Bankruptcy Court and/or reduced by the Bankruptcy Court" is hereby cancelled and made null and void.

3. That the attorney applicants shall within ten (10) calendar days file with the Clerk and serve on the Committee of Creditors, the twenty (20) largest unsecured creditors, and the U.S. Trustee, a detailed explanation of the circumstances surrounding the $50,000.00 note and the assignment thereof, including but not limited to a description of how the note was obtained by the Debtor, the consideration received by

the Debtor for the note, and true copies of the note and the assignment.

4. That any request for reconsideration of this Order shall by no later than February 1, 1989 be filed with the Clerk and served on the Committee of Creditors, the twenty (20) largest unsecured creditors, and the U.S. Trustee. If any hearing is requested, the Calendar Clerk shall schedule a hearing at 10:00 A.M. on Friday, February 3, 1989, when other matters in this case are also scheduled for hearing.

5. That this Order shall be served by the Clerk forthwith upon the entire mailing matrix.

SO ORDERED.