## In re MISSOURI MINING, INC., Debtor.

### Bankruptcy No. 95–50194.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Sept. 20, 1995.

Jerry Phillips, United States Trustee's Office, Kansas City, MO, for United States Trustee.

Jonathan Margolies, McDowell, Rice & Smith, Kansas City, MO, for Debtor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The United States Trustee (the "UST") moved this Court to vacate its Order authorizing the employment of debtor's counsel. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, the UST's motion will be denied.

Debtor filed for Chapter 11 bankruptcy relief on April 26, 1995. Just prior to such filing, debtor engaged the law firm of McDowell, Rice, & Smith ("MR & S" or "Counsel") as bankruptcy counsel and paid a retainer to MR & S in the sum of $15,000.00. This Court entered an Order authorizing the employment of Counsel on May 3, 1995. It is undisputed debtor obtained the funds for the retainer from Orlando C. Schiappa, now deceased, a principal and creditor of debtor. Mr. Schiappa, and now Mr. Schiappa's probate estate, admittedly hold interests adverse to debtor's interest. Mr. Schiappa received payments from the debtor within one year of the bankruptcy filing. His probate estate still holds a claim against the debtor. Mr. Schiappa was a principal in several affiliated corporations, all of whom had dealings with the debtor. American Industries and Resource Corporation ("AIRC"), one of the corporations controlled by Mr. Schiappa, has also filed a Chapter 11 bankruptcy petition. Debtor has filed a proof of claim in AIRC's bankruptcy in the sum of $571,907.28.[1] MR & S does not and has not ever represented AIRC in its bankruptcy, which is pending in a different district.

Counsel testified that he met with Mr. Schiappa, Mr. N. William Phillips, and Mr. R.E. Wolfe on April 7, 1995, to discuss debtor's financial situation. Following engagement of MR & S, and the filing of the petition on April 26, 1995, Counsel discovered that Mr. Schiappa was the actual source of the $15,000.00 retainer. Counsel then immediately filed a full disclosure on April 27, 1995.

■ The UST argues first that accepting a retainer from a third party who holds an interest materially adverse to the debtor violates the prohibition against dual representation in the Model Rules of Professional Conduct (the "MRPC").

The MRPC provide that "[a] lawyer shall not represent a client if the representation of that client will be directly adverse to another client." MRPC 1.7(a). The evidence, however, shows that MR & S has never represented Mr. Schiappa or his estate, and does not now. Although Mr. Schiappa provided the funds which allowed this debtor, in which he holds an interest, to seek relief under Chapter 11, the evidence demonstrates that counsel's sole loyalty is to debtor and its creditor body, not Mr. Schiappa's estate. There were no other understandings between counsel and Mr. Schiappa, either expressed or implied. Since Mr. Schiappa has never been a client of MR & S, representation of the debtor by MR & S does not violate MRPC 1.7(a).

■ The UST argues next that employment of MR & S is prohibited by the Bankruptcy Code ("the Code").

Section 327(a) of the Code provides as follows:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

---

1. The bankruptcy schedules reflect the following claims:

   1. Mr. Schiappa's estate holds a claim for $6,400.00 against the debtor;

2. Mr. Schiappa received a payment from debtor in the amount of $2,358.82 within one year of the bankruptcy filing; and
3. debtor has a claim against AIRC in the amount of either $371,787.08 or $571,907.28.

11 U.S.C. § 327(a).[2] Pursuant to section 327(a) this Court must decide whether accepting payment from Mr. Schiappa—a third party whose interest is adverse—means that counsel holds or represents an interest adverse to the estate, or is in some way not disinterested. The Code does not define "an interest adverse." *In re Kelton Motors, Inc.*, 109 B.R. 641, 645 (Bankr.D.Vt.1989). The Code does, however define a "disinterested person" as a person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

11 U.S.C. § 101(14).

Certain courts have held that an attorney—who had accepted a retainer from a non-debtor third party—was disqualified from representing a debtor. However, these decisions are generally based a least in part on other factors, such as serious allegations of misconduct by the third party, or inadequate disclosure by the attorneys of the source of their retainer. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877 (9th Cir.1995) (counsel disqualified for failure to make disclosure); *In re Black Hills Greyhound Racing Ass'n*, 154 B.R. 285, 294–95 (Bankr.S.D. 1993) (Counsel failed to disclose fact that law firm actually represented majority stockholder of debtor, and that retainer had been paid by majority stockholder); *In re Crimson Inv., N.V.*, 109 B.R. 397 (Bankr.D.Ariz.1989) (failure to disclose source of retainer warranted disqualification); *In re Hathaway Ranch Partnership*, 116 B.R. 208 (Bankr. C.D.Cal.1990) (law firm failed to make adequate disclosure; transfer of retainer by third party, who was himself in bankruptcy, might be a fraudulent transfer); *In re Nat'l Distrib. Warehouse Co., Inc.*, 148 B.R. 558, 561–62 (Bankr.E.D.Ark.1992) (law firm failed to disclose that it had received retainer from a related entity, and that debtor had transferred most of its assets to that related entity without adequate consideration). Indeed, in *Park-Helena*, where the retainer had been paid by debtor's President, the Court stated explicitly that there was insufficient proof that a conflict actually existed. 63 F.3d at 881 n. 5.

The U.S. Trustee cites just one case in which a Court stated that payment of a retainer by a third party creditor is disqualifying *per se*. *In re Huntmar Beaumeade 1 Ltd. Partnership*, 127 B.R. 363, 365 (Bankr. E.D.Va.1991). But a more recent case from that same Court held that a law firm's representation of debtor's general partner in a separate Chapter 11 case, and its acceptance of a retainer from the general partner, did not preclude such firm from representing the partnership and being compensated for such representation. The Court rejected "the use of *per se* rules when evaluating disinterestedness, favoring instead a fact-intensive inquiry into the situation presented." *In re Palumbo Family Ltd. Partnership*, 182 B.R. 447, 466 (Bankr.E.D.Va.1995).

The *Palumbo* Court relied on Fourth Circuit precedent which confines the use of *per se* rules to those situations specifically set out

---

in the Bankruptcy Code definition of "disinterested person." *Id.* The Fourth Circuit stated as follows:

> Because the few absolute disqualifications Congress has established are carefully delineated and narrowly tailored, the courts must take care not to fashion absolute prohibitions beyond those legislatively mandated without some measure of assurance that the purposes of the Bankruptcy Code always will be served thereby.

*Harold & Williams Dev't Co. v. United States Trustee (In re Harold & Williams Dev't Co.)* 977 F.2d 906, 909–10 (4th Cir. 1992).

The First Circuit has also held that section 327(a) will not support an inflexible interpretation or a bright-line rule as to what is a disinterested person. *In re Martin,* 817 F.2d 175, 181 (1st Cir.1987). *See also, In re Kelton Motors, Inc.,* 109 B.R. 641, 656 (Bankr.D.Vt.1989). *Id.* The test articulated by *Martin* is "whether a potential conflict, or the perception of one, renders the lawyer's interest materially adverse." *Id.* at 182. There must, however, be full disclosure to allow the court to make a case by case analysis.

■ In sum, I find that payment of counsel's retainer by someone other than the debtor does not disqualify counsel *per se.* Instead, the Court must look at the facts of each case to determine whether counsel holds or represents an interest adverse to the estate, and is not disinterested. In analyzing those facts, the cases provide guidance as to factors the Court should consider.

In *In re Olson,* 36 B.R. 74, 76 (D.Neb.1983) (Beam, J.), the Nebraska District Court articulated the following four factors to determine whether payment of counsel's retainer by a third party is a basis for disqualification: (1) whether there was any specific advantage to the third party; (2) whether there was any injury to the estate; (3) whether there was prejudice to other creditors; and (4) whether an actual conflict arising from the payment is apparent. Upon applying the four factors the court in *Olson* found the law firm did not represent an interest adverse to the debtor. In a more recent case, a bankruptcy court stated that the "payment of the retainer by the 100% shareholder does not equate to representation of that shareholder." *In re Glenn Electric Sales Corp.* 89 B.R. 410, 415 (Bankr.N.J.) *aff'd* 99 B.R. 596 (D.N.J.1988). *See also In re Kelton Motors, Inc.,* 109 B.R. 641, 656 (Bankr.D.Vt.1989). Likewise, the court refused to extend the definition of "disinterestedness" to include a professional who has been paid by an interested party to represent the debtor. *Glenn Electric,* 89 B.R. at 417.[3]

Applying the *Olson* factors to the facts of this case, I find that MR & S should not be disqualified. First, there is no proof of any advantage to Mr. Schiappa. Debtor's counsel represented, and I find, that there were no strings attached to the payment advanced by Mr. Schiappa. In fact, the check was drawn on the trust account of Mr. N. William Phillips, and counsel was unaware of the origin of the funds until the day after the bankruptcy petition was filed. Counsel made full disclosure immediately upon discovering the retainer did not come from debtor's funds. Counsel also represented that he met Mr. Schiappa on only one occasion, in connection with the filing of this case, and that Mr. Schiappa requested nothing other than that the firm file the case on behalf of the debtor. Further, there has been no contact with any representative of Mr. Schiappa's estate.

As to the second factor, there was no injury to the estate. In fact, the estate benefitted because debtor was able to retain counsel without using its scarce or nonexistent funds or incurring additional debt. Had the debtor borrowed the money to retain counsel, the estate would be responsible for the repayment of said loan. To date, no proof of claim has been filed by either Mr. Schiappa or his probate estate seeking reimbursement for the $15,000.00.

---

**3.** *Glenn Electric* eventually held that the law firm should be disqualified for a potential conflict of interest, and for the appearance of a conflict of interest. 89 B.R. at 418. This Court has previously held, however, that there must be a proven conflict, not a supposition, in order to disqualify a law firm. *See In re Creative Restaurant Management, Inc.,* 139 B.R. 902, 912 (Bankr.W.D.Mo. 1992).

The third factor requires this Court to determine if there was any prejudice to creditors from the payment of the retainer. It seems apparent that if the estate benefitted from this transaction, the unsecured creditors benefitted from the same transaction. At worst, there is an additional $15,000.00 in the estate for payment to creditors. It is also significant that there is an Unsecured Creditor's Committee which filed a Comment in support of the retention of MR & S. The Creditor's Committee and MR & S both argue that the retainer paid directly by Mr. Schiappa has preserved the estate for the payment of unsecured creditors. And, to the extent it is necessary to review the estate's dealings with Mr. Schiappa or other insiders, the Creditor's Committee is available to conduct such review.

Lastly, this Court must decide whether any actual conflict is apparent from the transaction at issue. Of course, a Chapter 11 filing by a corporation raises the specter of conflict between that corporation and its creditors, on the one hand, and the equity owners on the other. If counsel to the corporation also represents an equity holder, an actual conflict exists. Here, as shown, MR & S does not, and has never, represented Mr. Schiappa, and has no duty of loyalty to him or his heirs.

Corporate debtors are prohibited from filing Chapter 11 cases *pro se*. *New Concept Housing, Inc. v. Poindexter (In re New Concept Housing, Inc.)*, 951 F.2d 932, 939 (8th Cir.1991) (citing Advisory Committee Note to Fed.R.Bankr.P. 9010). Not surprisingly, corporations contemplating a Chapter 11 filing often either do not have funds available with which to retain competent counsel, or cannot legitimately gain access to funds for that purpose due to creditor liens. For those same reasons, competent counsel often will not take on the representation without a retainer sufficient to finance at least a portion of the anticipated fee. In order for such corporations to file for bankruptcy relief, insiders must often supply funds for a retainer. Counsel, therefore, often find themselves in the position of having to negotiate the amount of such retainer with insiders. That negotiation, without more,

does not necessarily mean that counsel represents the insider, or has divided loyalties.

The UST points out that it would prefer that the insider make its payment to the debtor, in the form of a capital contribution, and then have the debtor pay counsel. In this case, no claim has been filed by Mr. Schiappa's heirs as to his $15,000.00 payment. And no loan documents were offered into evidence to prove that the payment was to be treated as a loan. I, therefore, presume and find that such payment should be treated as a capital contribution to the debtor, even though such funds were paid on behalf of, not to, the debtor.

In sum the following factors argue in favor of denying the United States Trustee's motion: (1) there is no evidence that MR & S has ever represented Mr. Schiappa; (2) there is no evidence that Mr. Schiappa attached any strings to the payment of the retainer; (3) there is no evidence MR & S was aware of the source of funds until after payment; (4) MR & S made adequate and immediate disclosure; (5) there is a creditor's committee appointed which supports the debtor's choice of Counsel; (6) debtor could only file and proceed with its Chapter 11 case if it retained counsel and, with no funds to retain counsel, the insiders represent the only realistic source of such funds. The facts and circumstances of this case weigh heavily in favor of allowing debtor to retain its counsel of choice.

I, therefore, find that the payment of the retainer by an insider, without more, does not create an actual conflict of interest sufficient to disqualify debtor's counsel. I further find that MR & S does not hold or represent any interest adverse to the debtor, and is disinterested.

For all of the above reasons, the UST's motion to vacate this Court's Order authorizing the employment of MR & S as counsel for debtor will be denied.

An Order in accordance with this Memorandum Opinion will be entered this date.