**In re LOTUS PROPERTIES LP, Debtor.**

**Bankruptcy No. SB96–14907MG.**

United States Bankruptcy Court,
C.D. California,
San Bernardino Division.

Sept. 16, 1996.

Todd C. Ringstad, Law Offices of Todd C. Ringstad, Irvine, CA, for Debtor Lotus Properties.

Timothy J. Farris, Office of U.S. Trustee, San Bernardino, CA, for U.S. Trustee.

### MEMORANDUM–OPINION, FINDINGS, & ORDER

MITCHEL R. GOLDBERG, Bankruptcy Judge.

## I.

### INTRODUCTION

Before the Court is an Application of Lotus Properties LP (a debtor with very limited cash reserves) for Authorization to Employ the Law Offices of Todd C. Ringstad as general insolvency counsel and the United States Trustee's Objection thereto. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). For the reasons set forth below, the U.S. Trustee's objection is denied in part and granted in part, subject to the clarifications set forth in this memorandum.

## II.

### FACTS

Lotus Properties LP ("Lotus" or "Debtor") filed a voluntary petition under Chapter 11 of Title 11 on March 28, 1996, seven months after a state-court receiver took possession and control of the single asset of the Debtor, a 104–unit motel located in Victorville, California. David Tsai is the Debtor's sole general partner. The Tsai Family Trust is the sole limited partner. Appointment of the Receiver was obtained by Lotus' primary secured lender, Cathay Bank.[1] The duration of the receivership's control left Lotus with scarce funds for pre-petition use and/or for the purpose of employing competent general insolvency counsel. Post-petition, Lotus has been unable to meet all of it's ongoing operating expenses and, as such, advances have been made by the general partner, David Tsai. It was foreseeable under all circumstances that the Bank would object to the use of its cash collateral for counsel fees.

Lotus timely served and filed it's Application for Authorization to Employ the Law Offices of Todd C. Ringstad ("counsel") as general insolvency counsel ("Application") on May 13, 1996. The Application disclosed that David Tsai personally paid counsel a pre-petition retainer of $7,500, which was promptly placed in a segregated client trust account. The Attorney–Client Fee Agreement disclosed that Mr. Tsai agreed to contribute the retainer plus payment of fees and costs incurred on an ongoing basis which, "will not be paid from the assets of Lotus"

---

1. David and Millie Tsai have personally guaranteed the Promissory Note with the Bank.

(*See* Exhibit 2 attached to Application). More precisely, the Fee Agreement contained the following pertinent language with respect to the provision signed by Mr. Tsai, individually:

> [Tsai] hereby agrees to be **personally responsible** for payment of all fees and costs incurred on behalf of Lotus. [Tsai] understands and agrees that the Firm will owe its **sole legal duty to Lotus** and will act solely in the interests of Lotus regardless of whether such action is in the best interest of [Tsai] (emphasis added).

The U.S. Trustee argues that counsel is prohibited from representing the Debtor because Mr. Tsai's direct payment of attorney's fees constitutes a *per se* impermissible conflict of interest.

With respect to the procedure for payment, the Fee Agreement provided that counsel would render an invoice every two weeks to Mr. Tsai and Mr. Tsai agreed to contribute sufficient funds to cover the amount.[2] Counsel agreed to file Professional Fee Statements for future disbursements and withdraw funds in accordance with the U.S. Trustee Guide to Applications for Employment of Professionals and Treatment of Retainers ("Employment Guide") for the Central District of California. Counsel did not propose to file any interim fee applications during the pendency of the case. Counsel also disclosed that he would only file a *final* Fee Application at the conclusion of the case, seeking allowance of all fees and costs "if the Court deemed such filing necessary and appropriate," and agreed to repay any amount paid through interim payments that exceeded the amount ultimately allowed. The Trustee also objects to counsel's proposed method of withdrawing funds as they are received by Mr. Tsai asserting that counsel, if he is employed, is required to file formal Fee Applications and receive court approval in order to obtain payment for fees and costs.

2. The Agreement specifically stated that no portion of the retainer was to be treated as "earned on receipt." Counsel also made the required averments that he is a "disinterested person" within the meaning of 11 U.S.C. 101(14), has no adverse interest to Lotus or to the estate, and is not owed any funds aside from the additional retainer funds. The remainder of the retainer as

## III.

### *ISSUES PRESENTED*

A.  May counsel for debtor in possession be employed when it is disclosed that the payment of the pre-petition retainer as well as all ongoing legal fees and costs will be paid by the principal/insider of the debtor, or do these payments *per se* constitute an impermissible conflict of interest mandating denial of the Application for Employment?

B.  If employment is approved, may counsel be authorized to withdraw funds from the pre- and post-petition retainer without a fee application, provided he complies with the Fee Guide procedures for pre-petition retainers promulgated by the U.S. Trustee?

## IV.

### *DISCUSSION*

A.  ***Payment of the pre-petition retainer and ongoing counsel fees by the general partner of the Debtor does not constitute a per se impermissible conflict of interest.***

■ This Court is given authority to review and approve the Employment Application by virtue of 11 U.S.C. §§ 327, 328, 329(b), 330 and 331 of the Bankruptcy Code. Section 328(a) provides that any agreement or arrangement concerning the employment or compensation of a professional by a debtor-in-possession is subject to court review and approval and that such arrangement or agreement must be reasonable. This requirement is further supported by Bankruptcy Rule 2014 which mandates that professionals seeking approval of their employment by the bankruptcy estate must disclose "... any proposed arrangement for compensation ..." and "... all of the person's connections

well as the ongoing additional payments covering fees and costs would be deposited in the client trust account in accordance with the U.S. Trustee Guide to Applications for Employment of Professionals and Treatment of Retainers for the Central District of California. Finally, counsel disclosed that Mr. Tsai retains independent counsel dealing with matters related to Cathay Bank.

with the debtor, creditors, any other party in interest, their respective attorneys and accountants, [and] the United States trustee...." Title 11 U.S.C. §§ 327(a) and 1107(a) present certain limitations on authorizing a debtor-in-possession to employ an attorney or other professional. That professional must be considered a "disinterested person" and must not hold an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed. "Disinterested person" is defined in 11 U.S.C. 101(14), in pertinent part as follows:

"disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider; ...

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

■ All facts pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate must be disclosed. The disclosure must be made in the Application for Order Approving Employment, and the burden is on the person to be employed to come forward and make full, candid and complete disclosure in applications for employment. *In re Park Helena Corp.*, 63 F.3d 877, 880–882 (9th Cir.1995); *In re Gire*, 107 B.R. 739, 746 (Bankr.E.D.Cal.1989) (citing *In re Roberts*, 75 B.R. 402, 411–12 (Bankr.D.Utah 1987) (en banc), aff'g, 46 B.R. 815, 839 (Bankr.D.Utah 1985)); Fed.R.Bankr.P. 2014.

It is undisputed that the facts pertinent to this Court's determination of the approval of the Application for Employment in Lotus were fully disclosed. The issue presented is whether the facts that were disclosed require this Court to deny approval of the Application based on a perceived potential conflict of interest. The challenged action is Mr. Tsai's payment of the pre-petition retainer as well as his funding of the ongoing payments covering administrative fees and costs, considering that he is the general partner of the Debtor and is also a guarantor of it's major creditor, Cathay Bank.

### 1. *The "Restrictive" Approach*

■ Courts have taken distinctly different approaches in addressing the issue of payments by a third party/insider to fund proposed counsel for the debtor-in-possession. This Court characterizes the opposing views as the "restrictive approach" and the "analytical approach." The "restrictive approach" announces a *per se* rule prohibiting proposed counsel from representing a Chapter 11 debtor-in-possession where counsel's fees and costs are contributed by a principal or insider of the debtor. That position is most clearly expressed in *In re Hathaway Ranch Partnership*, 116 B.R. 208 (Bankr.C.D.Cal.1990).

In *Hathaway*, the bankruptcy court held that proposed counsel's acceptance of payment of the pre-petition retainer from a third party necessarily presented a conflict of interest "... in that counsel is serving two masters—the one who paid counsel and the one counsel is paid to represent." *Id.* at 219. The Court reasoned that

Third parties do not transfer property or funds to an attorney to represent a debtor in possession unless that representation is in the best interest of the third party. It is often the case that the interests of the third party are not identical to the interests of the debtor in possession in its role as fiduciary of the bankruptcy estate. *Id.* at 219.

The Court ruled that such an arrangement represents an "... actual conflict of interest that disqualifies a professional from being employed pursuant to 11 U.S.C. § 327 absent a showing that the interests of the third party and the bankruptcy estate are identical upon notice to all creditors, equity security holders and other parties in interest." *Id.* at 219. Ultimately, the Court held that proposed counsel for the debtor-in-possession failed to show that the interest of the third party and the bankruptcy estate were identical and, as a result, proposed counsel had an actual conflict of interest between the debtor and the third party insiders. *Id.*

392

Thus, *Hathaway* stands for the proposition that the absence of identical interests creates an impermissible conflict so that, with one exception, the principals of the debtor-in-possession may never fund attorney's fees for the bankruptcy estate. The reasoning for the decision appears to be based upon the belief that any future potential appearance of impropriety demonstrates an existing conflict because the insider may encourage counsel to take some action that is adverse or different from the *pure* interests of the debtor-in-possession.

This Court believes that, although Mr. Tsai's and Lotus' interests are united, they are not absolutely identical. Lotus' interests are united and best served by Mr. Tsai's funding of the legal fees and costs, including the retainer, so that it's scarce cash reserves were not completely depleted before the start of the case or during the proceedings. As a result, Lotus would be able to focus upon improving it's own financial condition. That improvement would then benefit Mr. and Mrs. Tsai and the Tsai Family Trust as they reap whatever profit is earned from the operation of the motel, and reduce the debt owed to Cathay Bank. In reality, whether Mr. Tsai or the Debtor reduces the debt owed, if the case is ultimately dismissed or converted to a case under Title 11, Chapter 7, the Bank will be free to seek a deficiency judgment against Mr. and Mrs. Tsai through judicial foreclosure on the motel asset. With this knowledge, Mr. Tsai has the necessary motivation to ensure the smooth running of the bankruptcy case, including payment of attorney's fees.

Several prior bankruptcy court decisions from this Circuit are in accord with *Hathaway*. As in *Hathaway*, these decisions are generally based on other facts, such as serious allegations of misconduct by the third party, inadequate disclosure by counsel of the source of the retainer, dual representation by proposed counsel of the bankruptcy debtor and a principal/insider, the failure of counsel to provide full disclosure of all pertinent connections, and the presence of a reimbursement or guarantee arrangement. *In re McKinney Ranch Associates*, 62 B.R. 249 (Bankr.C.D.Cal.1986) (counsel's representa-

tion of general partners of the debtor while simultaneously representing the debtor in possession on related matters to the bankruptcy was a potential conflict of interest disqualifying counsel unless and until that adverse representation was terminated); *In re WPMK, Inc.*, 42 B.R. 157 (Bankr.D.Haw. 1984) (counsel's failure to disclose that payments received on behalf of debtor were funded by creditors, who were to be reimbursed for their contributions upon court's approval of fee application, constituted an actual conflict of interest); *In re Bergdog Productions of Hawaii, Inc.*, 7 B.R. 890 (Bankr.D.Haw.1980) (counsel's receipt of payment from principals of the debtor, with principal's guarantee of further payments in exchange for reimbursement from any court-approved compensation, constituted a conflict of interest justifying denial of employment application); *In re Marine Power & Equipment Co., Inc.*, 67 B.R. 643 (Bankr. W.D.Wash.1986) (attorney appointed as special counsel denied fees for failure to disclose dual representation of debtor corporation and it's officers as co-defendants in connection with criminal proceeding, constituting actual conflict of interest); *In re Senior G & A Operating Company, Inc.*, 97 B.R. 307 (W.D.La.1989) (provision of application for employment of debtor's counsel providing for guaranty of fees by debtor's insiders, whether or not court approved, denied as evasion of court's power to determine compensation); and *In re Glenn Electric Sales Corp.*, 89 B.R. 410 (Bankr.D.N.J.1988); aff'd by *In re Glenn Electric Sales Corp.*, 99 B.R. 596 (Bankr. D.N.J.1988) (counsel's receipt of retainer from debtor's 100% shareholder, who borrowed money from creditor to retain the firm, gives rise to a potential conflict of interest, but does not represent an interest adverse to the estate as a matter of law).

## 2. *The "Analytical" Approach*

The reported case which best embodies the "analytical approach" is *In re Kelton*, 109 B.R. 641 (Bankr.D.Vt.1989). *Kelton* dealt with a disqualification motion brought by creditors of the debtor-in-possession. In that case, counsel received fees for services from the debtor's sole shareholder, officer and officer's spouse which were rendered

prior to the debtor's subsequent conversion from Chapter 11 to Chapter 7. The creditors argued that the *Kelton* Court should adopt a *per se* rule that the arrangement created a presumption of a conflict of interest between the debtor, counsel and it's principals. In support of their position, the creditors cited multiple rulings by the Hawaii Bankruptcy Court. *See In re WPMK, Inc.* and *In re Bergdog Productions of Hawaii, Inc., supra.* The *Kelton* Court responded by stating:

> In an appropriate case there may be merit to Creditors' position. We decline their request in this instance because this arrangement was disclosed to the Court, the corporate debtor consented to it, and, it was understood by DIP's principal that counsel's duty of undivided loyalty was owed only to the DIP. Moreover, the adoption of a *per se* rule would effectively deprive future small corporate bankrupt debtors from obtaining competent counsel of choice. *Id.* at 642.

The issue regarding full disclosure was undisputed, as in Lotus. The *Kelton* creditors contended that counsel's acceptance of payment from the debtor's insider created a potential, if not actual, conflict. They argued that counsel had conflicting loyalty and would be hindered in exercising independent judgment on behalf of the debtor-in-possession rather than on behalf of the interests of Mr. Kelton, the principal and his family. *Id.* at 643. However, after thoughtful analysis of federal and state law, the *Kelton* Court disposed of that argument as follows:

> We reject Creditors' invitation to adopt a *per se* rule against this disclosed arrangement for legal representation by payment from a third party payor-insider where there is no evidence of a fee guarantee or material creditor relationship between the payor-insider and corporate debtor/client. Instead, we believe the inquiry must be case and fact specific. An equitable approach as opposed to a hard and fast rule denying employment is the better custom, and is certainly more consistent with the Code.
>
> Many small corporations facing the threshold of the Bankruptcy Court depend upon

their key, and many times solvent, insiders to fund the debtor's bankruptcy attorney for the latter's undertaking of vital pre- and post-bankruptcy representation. We counterbalance this pragmatic view with an obligatory uncharitable view, such an arrangement may be leaving the proverbial fox in charge of the hen house. We must be assured the Orwellian eye, the scowling mien, and the inquiring mind of debtor's counsel is focused where it should be—on the debtor's interests. *Id.* at 657–58.

*Kelton* established a five-part test to serve as a guideline where counsel for the debtor is funded by debtor's insiders. The list includes the following elements:

(1) the arrangement must be fully disclosed to the debtor/client and the third party payor/insider;

(2) the debtor must expressly consent to the arrangement;

(3) the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;

(4) the factual and legal relationship between the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation;

(5) the debtor's attorney/applicant must demonstrate and represent to the Court's satisfaction the absence of facts which would otherwise create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest. *Id.* at 658.

Applying the *Kelton* factors to the case at hand, this Court finds that proposed counsel has satisfied all five elements:

First, it is undisputed that the terms of the fee arrangement were fully disclosed to Lotus and David Tsai, the third party payor/insider through the Application, the Attorney–Client Fee Agreement, and Mr. Tsai's signed Declaration filed with this Court. The U.S. Trustee's Objection is not based on inadequate disclosure.

Second, Lotus gave its express consent to the fee arrangement by executing a written Fee Agreement which fully disclosed the terms of that arrangement. In addition, the Application and signed Declaration of Mr. Tsai acknowledging that such payments would be made further demonstrated this understanding.

Third, it was disclosed that Mr. Tsai is represented by independent counsel with respect to issues relating to the real property and Cathay Bank, and his liability as a general partner. The Attorney–Client Fee Agreement included an express written acknowledgement that Mr. Tsai understood that counsel's duty of undivided loyalty is owed exclusively to Lotus.

Fourth, it is undisputed that the factual and legal relationships between Lotus, Mr. Tsai and proposed counsel, and all terms of the Fee Agreement were timely and fully disclosed to the Court at the outset of the case, upon the filing of the Application.

Fifth, this Court must decide whether any actual conflict, non-disinterestedness, or an impermissible potential conflict of interest is apparent from the transaction at issue. At hearing, this Court questioned counsel as to the meaning and intent behind the phrase "personal responsibility of Tsai" set forth in the Attorney–Client Fee Agreement. Through oral presentations made by counsel, relating to Mr. Tsai's advancement of the retainer and ongoing fees, this Court finds and clarifies that the phrase "personal responsibility of Tsai," although facially unclear, was intended to signify that Mr. Tsai, not Lotus, will be the individual making the payments. Therefore, this Court rules that the Order on Approval for Employment must provide that Mr. Tsai has no *individual* legal liability for providing payment based upon the Attorney–Fee Agreement, that his contributions shall not be deemed a guarantee of the fees and expenses and, further, that those payments shall create no direct obligation by Mr. Tsai to counsel. With that statement clarified in the Order Approving Employment, the fifth element of *Kelton* is met.[3]

The recent decision of *In re Missouri Mining, Inc.,* 186 B.R. 946 (W.D.Mo.1995) also addressed this issue utilizing an "analytical" approach. Following authorization of his employment, counsel discovered that a principal and creditor of the debtor was the actual source of the $15,000 retainer that debtor had paid counsel pre-petition. Upon discovery, counsel filed a full disclosure. The U.S. Trustee filed a motion for vacation of the order authorizing employment, objecting on the basis that counsel's acceptance of the retainer from a third party holding an interest materially adverse to the debtor, violated the Model Rules of Professional Conduct and § 327 of the Code. *Id.* at 947. However, the Court found no evidence demonstrating that counsel's sole loyalty was not owed to the debtor and it's creditor body, and found that there were no other understandings between counsel and the principal, either express or implied. *Id.* at 949–950. In determining that the Application should be approved, the Court refused to initiate a *per se* rule, holding that:

> Instead, the Court must look at the facts of each case to determine whether counsel holds or represents an interest adverse to the estate, and is not disinterested. In analyzing those facts, the cases provide guidance as to factors the Courts should consider. *Id.* at 949.

The Court relied upon a four-part test articulated by the Nebraska District Court in *In re Olson,* 36 B.R. 74, 76 (Bankr.D.Neb.1983), which provides similar guidelines to those established in *Kelton.*[4] *See also In re Pa-*

---

**3.** With this Court's characterization of the nature of the Mr. Tsai's payment of counsel fees and costs as strictly voluntary, the Court notes that if Mr. Tsai decides to withdraw funding of this administrative expense, counsel's only appropriate remedy is to serve and file a formal application to withdraw. Counsel does not have the automatic right of withdrawal. Instead, nonpayment of ongoing fees will serve only as one criteria for this Court's consideration, as in any other motion to withdraw.

**4.** The U.S. Trustee in *Missouri Mining* stated it preferred that the insider make a capital contribution to the debtor entity, and then have debtor transfer payment to counsel. However, since that Court found no evidence of any loan agreement and no claim had been filed by the principal as to his payment of the retainer, it found

*lumbo Family Ltd. Partnership,* 182 B.R. 447, 466 (Bankr.E.D.Va.1995) (law firm's representation of debtor's general partner in separate Chapter 11 case, and it's acceptance of a retainer from the general partner, did not preclude firm from representing partnership and being compensated for representation; court rejected use of *per se* rules and followed a fact-intensive inquiry into the specific situation).

### 3. *The Capital Contribution Exception to the Per Se Rule*

█ The U.S. Trustee asserts that a simple way to avoid the conflict of interest issue is to have Mr. Tsai make a capital contribution to Lotus and have Lotus pay the retainer. The Trustee argues that because the pre-petition payment made by Mr. Tsai never passed through Lotus, but was contributed directly to counsel, such payment can not be deemed a capital contribution and is, *per se,* impermissible. The Trustee also maintains that while the $7,500 retainer payment alone constitutes a conflict of interest, Mr. Tsai's funding of ongoing payments to counsel creates an additional conflict of interest. This Court does not agree that such a methodology is necessary to avoid the potential conflict of interest issue that concerned the *Hathaway* Court.

In practicality, a capital contribution is merely an end-run around making a direct payment of fees to counsel by an insider. If working capital is not available to pay counsel, a capital contribution will, in reality, be discussed by proposed counsel and insiders prior to filing. After all, attorneys demand and should receive a retainer to insure payment of fees and costs for services to be performed. A capital contribution simply recognizes that the principal/insider will not be refunded any payments made, except on the future success of the company. The effect of such a contribution is to remove the otherwise surreptitious taint which attaches to a direct payment. For example, if counsel instructs a principal/insider to make capital contributions during pre-bankruptcy planning meetings, or directs the principal to open a debtor-in-possession account to deposit payment checks for counsel's benefit, these payments by the insider to the company are not required to be disclosed to the court because they are cloaked in the guise of capital contributions. The court might never be aware of any agreements or guarantees which may have been established between the attorney and the principal.

In contrast, where an attorney *fully* discloses the exact nature of the payments, the payment procedure, and the relationship of the insider to counsel, the court is able to determine, with full knowledge, whether a potential or actual conflict exists. Full disclosure ensures that the checks and balances remain carefully in place. Capital contributions do not always release the strings by which counsel may be held. It only releases those which the court does not know about. Further, memorializing the agreement in writing and placing the facts on the record and provides notice to all creditors of record. *See also In re Kelton, supra.*

█ Consequently, this Court disagrees with the creation of a *per se* rule without allowance for consideration of individual facts and balancing the equities and practicalities of each unique situation. This Court believes that with the full disclosure set forth under the specific facts of this case, the mere fact that payment was made directly by Mr. Tsai to counsel does not constitute a sufficient potential conflict of interest to deny counsel's Application for Employment. To the extent that Bankruptcy Judges in the Ninth Circuit utilize the more restrictive *per se* rule, this Court respectfully declines to adopt said approach. Instead, the Court is satisfied with the reasonableness of the arrangement, finds that it was negotiated in good faith to ensure the retention of competent counsel, and determines that all parties understand that counsel's duty of loyalty is owed exclusively

---

that such payment "... should be treated as a capital contribution to the debtor, even though such funds were paid on behalf of, not to, the debtor." *Missouri Mining,* 186 B.R. at 950. The Court held that the payment of the retainer by

the insider, "... without more, does not create an actual conflict of interest sufficient to disqualify debtor's counsel ..." and that counsel "... does not hold or represent any interest adverse to the debtor and is disinterested." *Id.* at 950.

to the Debtor. These findings provide sufficient grounds to show that no conflict exists.

## B. Counsel may withdraw funds from the retainer pursuant to the Fee Guide procedures promulgated by the U.S. Trustee for the Central District of California, but only for a limited time and a limited amount.

■ The second major issue raised in this Application for Employment is the proposed procedure for counsel's distribution of the fees collected. As previously addressed, Mr. Tsai is authorized to make additional contributions to cover fees and costs in accordance with the terms of the Attorney–Client Fee Agreement, as clarified by this Memorandum. Counsel seeks to withdraw fees as they are charged, pursuant to the U.S. Trustee Guidelines, not only for the first $7,500 retainer but also for each payment made by Mr. Tsai throughout the entirety of the case, and to treat each deposit by Mr. Tsai as part of a retainer, pending the filing of a Final Fee Application "if required." The U.S. Trustee objects to this payment procedure on the grounds that it is inconsistent with the requirements of the U.S. Trustee Guidelines and violates the Bankruptcy Appellate Panel's holding in *In re Knudsen,* 84 B.R. 668 (9th Cir. BAP 1988).

■ 11 U.S.C. § 328 allows the bankruptcy court to employ a professional "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." (Emphasis added.) Section 330 provides the court with authority to award professional reasonable compensation for actual, necessary services and reimbursement for actual, necessary expenses. In order to receive payment, a professional may apply for interim compensation, pursuant to § 331, not more than once every 120 days, or more often if the court permits. The court may allow and disburse the compensation only after notice and hearing. In accord, § 328 requires that compensation is allowed and disbursed only after notice and a hearing. Thus, it is clear that Congress did not contemplate the allowance of compensation for professionals without notice and a hearing. In order to receive compensation in bankruptcy matters, professionals must file fee applications on an interim and final basis (Fed.R.Bankr.P. 2016(a), 2002(a)(7), 2002(c)(2) & 2002(k)).

Pursuant to the Bankruptcy Code and Rules, the intention was to discourage professionals from seeking payment more frequently than every four months, as prescribed under § 331. However, delay in the distribution of a retainer could cause substantial cash flow problems for attorneys, often resulting in submission of fee applications more frequently than every four months. As a result of extensive consultation by the U.S. Trustee with the Bench and Bar, the U.S. Trustee Guidelines, as revised 1994.

The U.S. Trustee Guide to Applications for Employment of Professionals and Treatment of Retainers of the Central District of California ("Employment Guide") instructs professionals who have received a pre-petition or post petition retainer to submit a monthly Professional Fee Statement to the Trustee, including documentation supporting the charges in the form of a regular fee application, and served on appropriate parties.[5] This Statement allows the professional to withdraw funds from the segregated client trust account in the amount requested in the Statement, pending future notice or hearing. If the U.S. Trustee or a party files and serves an objection, the court sets a hearing. If no objection is filed, the professional may draw down the requested compensation without further notice, hearing or order, pending the interim fee application, after one hundred twenty days has expired. The Employment Guide makes clear that although the professional may be performing services covered by a retainer, he or she is still required to file interim fee applications every 120 days. Once the full amount of the retainer is ex-

---

5. The Fee Statement must be served upon the official creditors' committee or, if no committee is appointed, on the 20 largest unsecured creditors, on those parties who have requested special notice, and upon the U.S. Trustee.

hausted, the professional is precluded from filing any further Fee Statements.[6]

The case upon which Trustee relies most heavily is *In re Knudsen, supra*. The proposed payment procedure involved in *Knudsen* is substantially similar to the terms proposed here. In *Knudsen*, the U.S. Trustee appealed an order authorizing a fee payment procedure where professionals and the creditors' committee were to be paid each month without prior court approval of billing statements. Every three months, counsel intended to serve and file an application for approval of the statements. The statements were to be paid promptly by debtor, if found acceptable. Finally, if quarterly statements were not timely filed, debtor would not be required to pay counsel until the statements were approved by the court.[7] While the largest creditor approved the procedure,[8] the U.S. Trustee objected on the basis that the procedure deprived the court from approving the fees requested before counsel was paid. The Bankruptcy Court approved the procedure and Trustee appealed.

The Bankruptcy Appellate Panel ("BAP"), acknowledging that the issue presented was one of first impression, was compelled to "... reconcile section 328's broad language which includes the term 'retainer' with section 331's specific requirements including notice and hearing." *Id.* at 671. The BAP read § 328(a)'s inclusion of the term "retainer" as indicating that "... in certain rare circumstances where adequate safeguards are taken, a bankruptcy court may implement a fee payment procedure such as the one used here." *Id.* at 671. The Trustee asserted, and the BAP agreed, that allowance and disbursement of fees is permitted only in accordance with §§ 330 and 331, but the Court did not find that those sections prohibit the transfer of funds to professionals prior to compliance with those sections. *Id.* "Section 328(a) specifically states that a bankruptcy court may authorize a retainer as part of a compensation agreement. A retainer contemplates payment of a lump sum at the beginning of a case or periodically thereafter." *Id.* The BAP found that three critical factors must exist, i.e., the fees must not be **finally** allowed until an application is filed; an opportunity for objection has been provided; and the court has reviewed the application. *Id.* (Emphasis added.) In affirming the trial court's decision, the Panel based it's decision on the finding of four specific factual criteria: (1) the case is unusually large; (2) an extended waiting period for payment would place an undue hardship on counsel; (3) counsel can respond to any reassessment; and (4) the fee retainer procedure is subject to a noticed hearing prior to any payment. *Id.* at 672–73.[9]

Thus, the function of the *Knudsen* drawdown procedure is to allow payment for legal fees without forcing counsel to file a noticed motion prior to the expiration of each four-month period until the completion of a large case. Here, the Trustee strongly urges this Court to prohibit counsel from making draw downs during the first four months of this case for any sum in excess of the $7,500 initially paid. In support of his position, the Trustee argues threefold: First, that the specific facts of this case fail to meet each of the four *Knudsen* criteria, primarily because this case is not unusually large and counsel has not shown that he will suffer undue hardship by awaiting compensation until the first interim application is approved. Second, the Trustee asserts the proposed proce-

---

**6.** The Guide notes that "some judges do not permit attorneys to draw down on retainers pursuant to the above procedures" and advises professionals to determine what procedures are required by each individual judge.

**7.** This type of payment procedure has been dubbed an "evergreen" payment, and the Employment Guide requires that notice of the employment application should include any terms, including "evergreen" provisions, that allow for payments or transfers of funds to the professional without any further notice or hearing.

**8.** The case was a Chapter 11 liquidation and debtors' principal secured creditor, Citicorp Industrial Credit, Inc. was funding debtor's administrative obligations.

**9.** The *Knudsen* Court acknowledged that in especially large cases, "... when counsel must wait an extended period for payment, counsel is essentially compelled to finance the reorganization. This result is improper and may discourage qualified practitioners from participating in bankruptcy cases; a result that is clearly contrary to Congressional intent." *Id.* at 672.

dure violates the principle established in *Hathaway*, which requires a professional to obtain an order approving compensation before making draw downs on retainers. *Hathaway*, 116 B.R. at 218. Third, the Trustee maintains that a pre-petition retainer is not intended to cover fees and costs beyond the first four months of the case because after that period, a professional must receive court approval through the filing of interim fee applications. In response, counsel for Debtor asserts that he should not be limited to making draw downs from the $7,500 retainer only and should not be punished for agreeing to provide representation in exchange for taking a very small retainer. Under normal circumstances, counsel argues that he would have required a retainer of no less than $25,000 which would have been reasonable.

The U.S. Trustee Guidelines allow for the dissipation of pre-petition retainers without prior order of the court and without distinction as to the size of the case. In fact, it was in response to the holding in *Knudsen* and based upon dialogue with both the Bench and the Bar, that the U.S. Trustee Guidelines for distribution of retainers were established. As a result, the Guidelines essentially provide a broad interpretation of the *Knudsen* and *Hathaway* holdings, at least as related to pre-petition retainers.

The Court finds that the message behind *Knudsen* and the intent of the U.S. Trustee Guidelines are satisfied by allowing counsel to utilize the Fee Statement procedure (previously discussed herein) during the initial post-petition period. The exercise of this draw-down procedure with a fixed retainer ceiling is, therefore, allowable within the initial four-month post-petition employment period. After discussion with the parties on record, this Court believes that a minimum retainer of $25,000 would have been reasonably requested by counsel to initially represent the Debtor. Because David Tsai was only able to fund the initial sum of $7,500 to counsel, this Court reasons that Mr. Tsai is, therefore, permitted to replenish this retainer account. This amount is to be treated as a pre-petition retainer, although received in post-petition increments.

To the extent that fees and incurred costs actually exceed the $25,000 maximum ceiling established herein prior to the end of the post-petition four-month period, this Court reasons that no additional fees and costs should be distributed from the client trust account except upon order of the court after notice and hearing.

In the event that the initial retainer of $25,000 is not exhausted by counsel by the end of this four-month period, this Court holds that any unused funds must remain in the client trust account until the time of the first Interim Fee Application. On the other hand, if a significant amount of fees and costs are incurred which exceed the $25,000 initial retainer, counsel has a remedy pursuant to 11 U.S.C. § 331 to seek approval of an Interim Fee Application prior to the expiration of the initial retainer period.

The Court anticipates that counsel will accrue fees and expenses beyond the allowed initial retainer and deems it proper for counsel for Debtor to seek approval of all future payments through the filing of regular Interim Fee applications pending a Final Fee Application. This Court believes that the allowance of ongoing draw-downs through the termination of the bankruptcy proceeding is not warranted by the facts in this case. It is the opinion of this Court that this reasoning does not conflict with the objectives of the U.S. Trustee Guidelines, is consistent with the requirements of §§ 330 and 331 of the Code, and exemplifies the spirit and intent of *Knudsen*.

## V.

### FINDINGS OF FACT

1. The facts pertinent to this Court's determination of the approval of the Application for Employment in Lotus were timely and fully disclosed to this Court.

2. The interests of David Tsai and Lotus, although united, are not absolutely identical.

3. The terms and conditions of the fee arrangement were fully disclosed to Lotus and David Tsai through the Application, the Attorney–Client Fee Agreement and the

Declaration of David Tsai filed with this Court.

4. Lotus consented to the fee arrangement when it executed a written Fee Agreement which fully disclosed the terms of that fee arrangement.

5. David Tsai, through execution of the Attorney–Client Fee Agreement clearly understood that counsel's duty of undivided loyalty was owed exclusively to Lotus.

6. Mere payment by the general partners to the Debtor for counsel fees does not constitute sufficient potential conflict of interest to deny counsel's Application for Employment.

7. The intent of *Knudsen* and the intent of the U.S. Trustee Guidelines are satisfied by allowing counsel to utilize the Fee Statement procedure during the first four months of the case only, and up to a maximum amount of $25,000.

8. The proposed payment procedure for the first four months of the case does not conflict with the objectives of the U.S. Trustee Guidelines and is consistent with the requirements of §§ 330 and 331 of the Code and exemplifies the spirit and intent of *Knudsen.*

## VI.

### *ORDER*

Based upon the foregoing Memorandum Opinion and Findings, it is

ORDERED, that the U.S. Trustee's Objection to the Employment Application is denied and the Application is conditionally approved; and it is further

ORDERED, that the Order Authorizing Employment of General Insolvency Counsel entered July 26, 1996 is hereby modified to provide that David Tsai has no individual liability for providing payment based upon the Attorney–Fee Agreement and that his contributions shall not be deemed a guarantee of fees and costs; and it is further

ORDERED, that counsel may draw down a maximum of Twenty–Five Thousand ($25,-000.00) Dollars for the first four-month post-petition employment period against fees and costs incurred pursuant to the U.S. Trustee Guide to Applications for Employment of Professionals and Treatment of Retainers for the Central District of California; and it is further

ORDERED, that David Tsai is permitted to replenish the initial Seven Thousand, Five Hundred ($7,500.00) Dollar retainer account, as provided by the Attorney–Client Agreement, without further order of this Court; and it is further

ORDERED, that to the extent fees and costs incurred exceed the $25,000.00 ceiling prior to the end of the initial four-month employment period, no future draw-downs are permitted beyond said $25,000, except upon order of this Court, after proper notice and hearing. In the event, post-petition retainer account funds remain on hand after the fourth month has expired, those monies are to remain on deposit in counsel's client trust account pending determination by this Court of an Interim and/or Final Fee Application hearing; and it is further

ORDERED, that pursuant to the Court ruling made on the record the statutory time within which the parties have the right to serve and file a Notice of Appeal herein will run upon the entry of this Memorandum–Opinion, Findings and Order upon the Court's Docket.